ACCEPTED
12-14-00015-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
4/8/2015 5:58:23 PM
CATHY LUSK
CLERK

No. 12-14-00015-CV

In the

Twelfth Court of Appeals

Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
4/8/2015 5:58:23 PM
CATHY S. LUSK
Clerk

In re Max B. Hanson, Relator

---

## Supplemental Motion to Enforce Decision

---

Over two years ago, the parties signed a Mediated Settlement Agreement. For nearly a year afterwards, Max Hanson argued for entry of a judgment on the MSA, without success. Ultimately, this Court stepped into the breach, directing the trial court to enter a final divorce decree enforcing the MSA.

There is now a document purporting to be that final decree. *See* ***Attachment 1.*** But it is not. It is neither final nor enforceable. And it does not carry out the MSA, in letter or in spirit.

The existing decree is inadequate as a final decree, for a cascade of reasons.

- It delegates judicial duties to third parties.

- It does not award property.

- It is fatally vague and non-specific in material respects.

- And it parrots MSA terms without ordering the specific actions necessary to effectuate them.

### *The decree shies away from necessary determinations.*

On the instrument's first page, the instrument states "This Court finds that this final decree best represents the agreement of the parties as set out in the Mediated Settlement Agreement." On page 14, the decree reserves the right to "make orders necessary to clarify and enforce" its terms. Such provisions are typical. But here, the proviso is used to avoid adjudicating material issues that already exist. Respectfully, this reflects the wrong approach.

To be adequate as a final decree, and being that it is now two years after the MSA's signing, the decree should not shy away from ordering the specific conduct necessary to implement the letter and spirit of the MSA or avoid adjudging whether the parties' past conduct complies with their agreements. Rather, it should order the actions necessary to effectuate the MSA and, as respects obligations that the MSA contemplated would have been performed by

now, the decree (or an accompanying document) should find whether those obligations have been met and should unambiguously pronounce the actions to be accomplished as a result.

This is no technical complaint. For example, on page 10, the decree purports to order Max, prospectively, to pay sums of money at specific times in the past. Specifically, it orders Max to make a series of six monetary payments at various dates in 2012 and 2013. Decree, p. 10-11. (The MSA included agreements for such a series of payments, which was entirely proper because the agreement was then prospective, calling for payments in the future.) Because of the passage of time, this constitutes a forbidden and impossible *ex post facto* order. This error renders the decree invalid.

Rather than thoughtlessly parrot that Max is now "ordered" to "make" certain payments back in 2012 and 2013, a proper decree would (1) acknowledge the MSA's terms as respects the obligation to pay money in the past, (2) make findings of fact as to whether Max's past conduct met his payment obligation under the MSA, and (3) declare the legal consequences of that conduct. But such a decree would not prospectively order a thing to be done before the decree is signed because that could make performance impossible. Here, such a decree would state that Max has fulfilled his MSA payment obligations and would order the necessary execution and exchange of specific documents transferring

property. The proposed decree that Max submitted would do this. So would the amended decree Max now proposes. *See* **Attachment 2**.

As it is, the current decree leaves it unclear as to whether Max has or has not met his payment obligation and unclear whether Max is or is not entitled to own the Canadian property afforded him under the MSA. Decree, p. 11 ("If MAX HANSON does not pay the entire $62,500 then the escrow agent does not deliver the transfer documents to Max and Marie maintains her ownership in the Alberta property.") Max has paid the $62,500 in a timely fashion. But Marie nonetheless has alleged that the payment obligation wasn't met because, apparently, while there is no question that Max made his payments on time and in U.S. dollars, Marie apparently contends that some sort of bank transfer fee rendered the payments deficient. The parties and the escrow/transfer agent should not be left to guess the effect of the decree on this major matter.

### The decree is impermissibly vague and improperly delegates judicial duties.

On page 10, the decree simply repeats statements from the MSA, with some editorial commentary about "all security documents" and about signing "all documents to transfer title." Specifically, the decree gives Max 10 days to sign "all security documents . . . to provide for the wife's protection in the event [he] defaults on" mortgages upon the Canadian properties awarded him in the decree. Decree, p. 10. Then, the decree orders that the unspecified documents,

whatever they might be, should be sent to the mediator, Bobby Freeman, to hold. This is inadequate, because it leaves the parties to speculate on what is required and foments dispute. Under the decree, Max has no clue as to what documents Mr. Freeman may think he should sign. He instead must guess or potentially suffer the permanent loss of rights in property the MSA earmarks for him. In effect, the court has abdicated its responsibility. It should not be this way.

Judgments, to be enforceable, "must be sufficiently definite and certain to define and protect the rights of all litigants . . . to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated." *Kimsey v. Kimsey*, 965 S.W.2d 690, 694 (Tex. App.—El Paso 1998, pet. denied). Divorce decrees are no different. To be effective, they likewise must spell out the details of compliance in "clear, specific, and unambiguous terms" so that the parties "will readily know exactly what duties or obligations are imposed." *Ex parte Linder*, 783 S.W.2d 754, 757 (Tex. App.—Dallas 1990, no pet.); citing *Ex parte Slavin*, 412 S.W.2d 43 (Tex. 1967). A proper decree would specify the material terms of the documents required to be signed or order the signing of identified documents (as Max's proposed decree would do).

Max repeatedly has asked that specific property-transfer documents be signed, with no success. To this end, Max's most recent proposed decree would have ordered the parties to sign specific documents. This proposal was rejected,

without explanation. A proper decree would order a specific party's signature on a specific document. The trial court has demonstrated overwhelmingly that it is unprepared to do this. Unless and until this Court directs it to do so, the controversy will continue.

### The decree editorializes impermissibly and makes incorrect rulings.

On page 11, the decree states the trial court's "understanding" about the parties' unpaid income taxes. Such statements are improper in a decree. And this one is incorrect. While the lawyers indicated that their clients would file separate tax returns for 2013 through 2015, the matter of *where* the parties would file those returns was not agreed in the MSA or otherwise determined. Nor was it addressed in the MSA. Max should be afforded his federal right to file his tax returns in either Canada or the U.S.

### The decree erroneously punishes Max for Marie's failures.

In connection with item 4 On page 11, in item 4, the decree is correct that the MSA contains the parties' agreement to file joint tax returns for tax years 2011 and 2012. But the decree omits to say that Marie was to have prepared those returns long ago, yet she indisputable failed to do so. This has triggered large, entirely unnecessary tax penalties and accrued interest. The decree burdens Max with half of all such sums, even though Marie alone caused them (and Max had no ability to avoid them). Worse, because of delays in signing a decree---

delays that Max was powerless to avoid---the necessary joint returns will now be delayed beyond another yearly deadline, causing additional penalties and interest to accrue. Max's proposed decree divides the penalties and interest equally through September 23 of 2013, when Marie was to have filed the returns, and imposes all subsequent penalties and interest on Marie, who caused them.

## Conclusion and Prayer

Marie and the trial court have had many opportunities, and each time they have proven incapable of proposing or entering a decree that actually addresses the issues and fully implements the MSA. This Court---to protect its jurisdiction, to effectuate its prior mandamus order, and to salvage as much of a fair resolution as is possible at this point---should order the trial court to sign Max's proposed decree or, at the very least, sign a truly final decree---one that actually decides the issues, announces specific orders, and is as free as possible of ambiguities and occasions for interpretation, discussion, or gamesmanship.

Max Hanson asks the Court to enforce its decision, by appropriate means, including ordering the trial court sign the attached decree, without further delay.

Respectfully submitted,

_____/s/ Greg Smith_____
GREG SMITH
Bar No. 18600600
NOLAN SMITH
Bar No. 24075632
RAMEY & FLOCK, P.C.

100 East Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile: (903) 597-2413
gsmith@rameyflock.com
nolan@rameyflock.com

Jerry Bain
Bar No. 01548000
BAIN, FILES, JARRETT,
   BAIN & HARRISON, PC
109 West Ferguson
Tyler, TX 75702
Telephone: (903) 595-3573
Facsimile: (903) 597-7322
jbain@bain-files.com

ATTORNEYS FOR RELATOR
MAX B. HANSON

## Certificate of Conference

Counsel emailed this motion to opposing counsel a short time before its filing, with a request that he state whether the motion will be opposed. It is assumed the motion will be opposed. If that is incorrect, we will, of course inform the court immediately upon learning so.

/s/ Greg Smith
Greg Smith

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing instrument was served upon the following in accordance with the applicable Rules of Civil Procedure on this the 8th day of April, 2015.

Via email – jacassels@consolidated.net
Jimmy A. Cassels
Cassels & Reynolds, L.L.P.
117 E. Lufkin Ave.
Lufkin, TX 75901

Via email – binselmann@angelinacounty.net
Hon. Robert K. Inselmann, Jr.
217th District Court
P. O. Box 908
Lufkin, TX 75902-0908

_/s/ Greg Smith_
GREG SMITH

| IN THE MATTER OF | § | IN COUNTY COURT AT LAW |
| THE MARRIAGE OF | § | |
| | § | |
| MARIE-CLAUDE L. HANSON | § | |
| AND | § | NUMBER 1 |
| MAX B. HANSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| TELL ARBOUR HANSON, A CHILD | § | ANGELINA COUNTY, TEXAS |

### *FINAL DECREE OF DIVORCE*

On March 31, 2015 the Court heard this case in connection with the Motions to Enter Judgment filed by both parties. Both parties objected to the entry of the proposed decree submitted by the other party. This Court convened this hearing for entry of Judgment in order to finalize this matter in accordance with the February 27, 2015 Order of the Twelfth Court of Appeals which ordered this Court to vacate its September 23, 2013 order setting aside the Mediated Settlement Agreement and to enter a final decree of divorce in compliance with the Mediated Settlement Agreement dated December 13, 2012. This Court finds that this final decree best represents the agreement of the parties as set out in the Mediated Settlement Agreement.

*Appearances*

Petitioner, MARIE-CLAUDE L. HANSON, appeared in person with her attorney of record, JIMMY A. CASSELS and announced ready.

Respondent, MAX B. HANSON, appeared through his attorney of record, JERRY BAIN, and announced ready.

*Record*

The record of testimony was duly reported by the court reporter for the 217th Judicial District Court of Angelina County, Texas. The Honorable Robert K. Inselmann heard this matter



sitting by assignment for the County Court at Law No. 1 of Angelina County, Texas.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court further finds that at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of Angelina County for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury fee, though paid by Respondent, has now been waived by both parties and their attorneys, and questions of fact and of law were successfully mediated and approved by the Court.

*Agreement of Parties*

The agreements in this *Final Decree of Divorce* were reached in mediation with Bobby L. Freeman, Mediator. This *Final Decree of Divorce* represents a merger of a *Mediated Settlement Agreement* between the parties. To the extent there exist any differences between the *Mediated Settlement Agreement* and this *Final Decree of Divorce*, this *Final Decree of Divorce* shall control in all instances. Any differences between the Mediated Settlement Agreement and this decree represent a decision by the Judge unless an agreement of the parties is specifically referenced.

*Divorce*

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON, Petitioner, and

MAX B. HANSON, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Child of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following child;

Name:         TELL ARBOUR HANSON
Sex:          Male
Birth date:   June 30, 1993
Home state:   Texas

The Court further finds that this child was underage or had not graduated from high school at the time of the filing, but has since been emancipated and is no longer before the Court; accordingly, there are no provisions made herein with regard to the child, TELL ARBOUR HANSON except the provision awarding him as an exemption to his mother for the tax year 2011 as referenced in paragraph 19 on page 17 of the Mediated Settlement Agreement.

*Division of Marital Estate*

The Court finds that the division of the community estate as set forth herein is a just and right division of the parties' marital estate having due regard for the rights of each party as agreed to by the parties at mediation.

Property to Husband

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, is awarded as his sole and separate property and the wife is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

H-1.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security system access and code, garage door

opener, warranties and service contracts, and title and closing documents:

> Approximately 160 acres of land located at SE *22 57 22* W. 4th, Sturgeon County, Alberta, Canada.

H-2.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control, including but not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Alberta, Canada, property awarded herein to husband, except as otherwise provided herein.

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-4.    All sums of cash in the possession of husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control, except as otherwise provided herein, including but not limited to the following:

> a,    Commercial Bank of Texas Acct No. xxx-5775; and
>
> b.    Bank of Nova Scotia Acct No. xxx-1510.

H-5.    The following stocks, bonds, and securities, together with all shares, partnership interests, dividends, splits, and other rights and privileges in "The Cow Horse Sale, Ltd.".

H-6.    The 2004 Jeep Liberty motor vehicle, vehicle identification number

_____, together with all prepaid insurance, keys, and title documents.

H-7. The 1997 Freightliner FL60 motor vehicle, vehicle identification number, together with all prepaid insurance, keys, and title documents.

H-8. The business known as "The Cow Horse Sale, Ltd.", including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

H-9. The items of personal property specifically awarded herein to husband as outlined in the *Mediated Settlement Agreement* which is attached hereto as Exhibit "A" and made a part hereof.

H-10. Husband's claims for personal injuries and damages in connection with Cause No. 120319049, *Max Hanson, Clifford Stover, and Pamela Stover* v. *Grisby Holton Ingram*, In the District Court of Robertson County, Texas, in which husband is represented by George Chandler.

Property to Wife

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, is awarded as her sole and separate property and the husband is divested of all right, title, interest, and claim in and to all of the property set forth and itemized as follows:

W-1. The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security system access and code, garage door opener, warranties and service contracts, and title and closing documents:

Approximately 25 acres located in the Elisha Price Survey Abstract #503 and more commonly known as 14060 W. Hwy 103, Pollok, Angelina County, Texas.

W-2. All household furniture, furnishings, Fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control, including but

not limited to all household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment located at the Pollok, Texas, property awarded herein to wife, except as otherwise provided herein.

W-3. All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-4. All sums of cash in the possession of wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control, including but not limited to the following:

     a.     Commercial Bank of Texas Acct No, xxx-_____ (wife's acct); and

     b.     Commercial Bank of Texas Acct No. xxx-_____ (wife's acct).

W-5. The 1998 Dodge Pickup motor vehicle, vehicle identification number

_____ , together with all prepaid insurance, keys, and title documents.

W-6. The 1997 Dodge Pickup motor vehicle, vehicle identification number

_____ , together with all prepaid insurance, keys, and title documents.

W-7. All right, title, and interest in "Rising Sun Ranch", including but not limited to all furniture, fixtures, machinery, equipment, inventory, cash, receivables, accounts, goods, and supplies; all personal property used in connection with the operation of the business; and all rights and privileges, past, present, or future, arising from or in connection with the operation of the business.

W-8. The total sum of $62,500 payable by husband to wife to equalize the division of assets between the parties. The payment terms of this debt are more specifically set out on page 11 of this Decree.

W-9. The following horse:

"Pretty Filly" also known as "Guns n Ceedees"

W-10. The items of personal property specifically awarded herein to wife as outlined in the Mediated Settlement Agreement, which is attached hereto as Exhibit "A" and made apart hereof.

W-11. The firearms in possession of wife.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, MAX B. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

H-1. The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory notes payable to Bank of Nova Scotia and secured by a mortgage instrument on the real property located in Sturgeon County, Alberta, Canada.

H-2. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the husband in this agreement, unless express provision is made to the contrary in this agreement.

H-3.    The following debts, charges, liabilities, and other obligations:

a.    Scotia Visa Gold Acct No. xxx-7052;

b.    Scotia Visa Acct No. xxx-1400 Line of Credit;

c.    MBNA Acct No. xxx-6262;

d.    Scotia Bank Acct No. xxx-0020;

e.    Scotia Bank Acct No. xxx-7011;

f.    Commercial Bank of Texas Acct No. xxx-0181; and

g.    Any credit card debt due and owing which is held in the husband's name as the primary cardholder.

H-4.    Any and all indebtedness owed to his mother, Maxine Hanson, and/or his son, Will Hanson.

H-5.    The total sum of $62,500 payable by husband to wife to equalize the division of assets between the parties. The payment terms of this debt are more specifically set out on pages 10 & 11 of this decree.

H-6.    The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011, due and owing by the parties.

H-7.    The first $2,500 and one-half of any remaining income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012, due and owing by the parties.

<u>Debts to Wife</u>

IT IS ORDERED AND DECREED that the wife, MARIE-CLAUDE L. HANSON, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, all of the debts, mortgages, encumbrances and/or obligations set forth and itemized as follows:

W-1. The balance due, including principal, interest, tax, and insurance escrow, and all other charges on the promissory note payable to Commercial Bank of Texas and secured by a deed of trust on the real property located at 14060 W. Hwy. 103, Pollok, Angelina County, Texas.

W-2. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the real and personal property awarded to the wife in this agreement, unless express provision is made to the contrary in this agreement.

W-3. The following debts, charges, liabilities, and other obligations:

    a. Canadian Tire MasterCard Acct No. xxx-8387;

    b. Commercial Bank of Texas Acct No. xxx-5850; and

    c. Any credit card debt due and owing which is held in the wife's name as the primary cardholder.

W-4. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2011 due and owing by the parties, less the first $2,500 to be paid by Husband, MAX B. HANSON.

W-5. One-half of the income taxes, penalties and interest due to the United States Internal Revenue Service for the calendar year 2012 due and owing by the parties, less the first

$2,500 to be paid by Husband, MAX B. HANSON.

The Court finds that in accordance with the Mediated Settlement Agreement (specifically but not limited to the Exhibit "B" section of the Mediated Settlement Agreement) that the following orders are entered with respect to the parties.

IT IS THE ORDER OF THIS COURT THAT -

(1)     MAX HANSON shall sign an Assumption Warranty Deed to MARIE L. CLAUDE HANSON conveying the Pollok Texas property to her within ten (10) days after the execution of this Decree.

(2)     All security documents (deed of trust to secure assumption or the Canadian equivalent on the Canadian real estate to provide for the wife's protection in the event MAX HANSON defaults on the Alberta, Canada mortgages. MAX HANSON is ORDERED to sign this document within ten (10) days of the entry of this decree.

(3)     MARIE CLAUDE L. HANSON IS ORDERED to sign a Deed of Trust to Secure Assumption on the Pollok Texas property for MAX HANSON'S benefit within ten (10) days of the execution of this decree.

(4)     MARIE CLAUDE L. HANSON is ORDERED to execute all documents on the pipeline easement on the Alberta Canada property within ten (10) days of the execution of this decree.

(5)     MARIE CLAUDE L. HANSON is ORDERED to sign all documents to transfer title to the Alberta Canada property to Max with him assuming the indebtedness within ten (10) days of the execution of this decree.

All executed documents described above are to be sent to Bobby Freeman escrow agent for transmittal to the lawyers for the parties at the same time. Mr. Freeman will divide his bill for this service equally between the parties.

In connection with this agreed property division the following provisions and conditions shall be the order of this Court.

(1)     MAX HANSON IS ORDERED TO pay MARIE HANSON $62,500 on the following terms:

    (A)     $10,000 on 12/13/12
    (B)     $10,000 on 01/31/13
    (C)     $10,000 on 02/28/13

(D)    $10,000 on 03/31/13

(E)    $10,000 on 04/30/13

(F)    $12,500 on 05/31/13

If MAX HANSON is more than ten (10) days late on any of the payments – the entire sum left on the $52,500 will be due within 45 days of the missed payment plus 10 days.

If MAX HANSON does not pay the entire $62,500 then the escrow agent does not deliver the transfer documents to Max and Marie maintains her ownership in the Alberta property.

If MAX HANSON pays the entire $62,500 then the escrow agent shall deliver to Max all of the transfer documents.

If MAX HANSON dies then his estate has 120 days from his death to pay sums due and the escrow agent delivers the documents to the estate representative as and if paid.

If MAX HANSON purchases life insurance and the insurance proceeds pay the sums due at his death - the escrow agent shall deliver the transfer documents to Max's estate representative.

## Income Tax Provisions

IT is the understanding of the Court that both parties (through their lawyers) have agreed to file United States Income tax returns with the Internal Revenue Service for the years 2013, 2014 and 2015 as follows:

(1)    For the tax year 2013 each party will file married (filing separately) claiming their own income and deductions.

(2)    For the tax year 2014 each party will file married (filing separately) claiming their own income and deductions.

(3)    For the tax year 2015 each part will file separately and single claiming sole responsibility for their own income and deductions.

(4)    For the tax years 2011 and 2012 IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall prepare the United States Tax returns and submit to MAX

HANSON for his review within ten (10) days after the execution of this decree to Jerry Bain at jbain@bain-files.com, 109 W. Ferguson, Tyler, Texas 75702

IT IS THE ORDER OF THIS COURT that both parties execute the 2011 and 2012 income tax returns and file them with the internal revenue service of the United States of America within fourteen (14) days after they are sent to MAX HANSON for review. Any dispute regarding this Order to sign or file these income tax returns should be referred to this Court immediately for resolution.

THIS COURT ORDERS the parties to execute a joint tax return for 2011 and 2012 because of its interpretation of paragraph 16 on page 15 of the Mediated Settlement Agreement.

If the parties can agree to file the 2011 and 2012 tax returns any other way (such as married filing separately, etc.) within the time limits set out above then the Court will defer to that agreement.

For the tax years 2011 and 2012 IT IS THE ORDER OF THE COURT THAT-

(1) MAX HANSON will pay the first $2500 on each return if taxes are due and the parties will each then pay one half of any sums which remain owing directly to the internal revenue service of the United States of America.

The Court has been advised by the lawyers that the sum of $32,500 (which is part of the $62,500 owed to MARIE CLAUDE L. HANSON by MAX HANSON is being held in the trust account of JIMMY A. CASSELS.

The COURT ORDERS JIMMY A. CASSELS to transmit the sum of $32,500 to the United States Internal Revenue Service in the names of both parties and list their social security numbers

on the check within ten (10) days after the entry of this divorce decree.

IT IS THE ORDER OF THIS COURT that MARIE CLAUDE L. HANSON shall have the right to claim the dependency exemption for TELL ARBOUR HANSON for the 2011 tax year in accordance with paragraph 19 on page 17 of the Mediated Settlement Agreement.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within five days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

Credit Cards

IT IS ORDERED AND DECREED that MARIE-CLAUDE L. HANSON is granted exclusive use of all credit cards in her name and MAX B. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MAX B. HANSON is ORDERED to return said cards to MARIE-CLAUDE L. HANSON on or before the date of divorce.

IT IS ORDERED AND DECREED that MAX B. HANSON is granted exclusive use of all credit cards in his name and MARIE-CLAUDE L. HANSON is enjoined and prohibited from using or incurring any indebtedness on said cards.

MARIE-CLAUDE L. HANSON is ORDERED to return said cards to MAX B. HANSON on or before the date of divorce.

This decree shall serve as a Muniment of Title to transfer ownership of all property awarded to any party in this Final Decree of Divorce.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Resolution of Temporary Orders*

IT IS ORDERED AND DECREED that Petitioner and Respondent are discharged from all further liabilities and obligations imposed by the temporary order of this Court.

*Future Litigation*

The parties agree and IT IS ORDERED that each party shall give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this *Final Decree of Divorce*, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case not expressly granted is denied. This is a final judgment, for which let execution issue and for all writs and processes necessary to enforce this judgment issue. This judgment is final and is appealable.

*Date of Judgment*

The parties satisfied the statutory residency requirements for a divorce through testimony on September 23, 2013, and this case was finally heard on the 31st day of March 2015 pursuant to an order issued by the Honorable Twelfth Court of Appeals in Tyler, Texas on February 27, 2015.

EXECUTED THIS ___6___ day of ____April____, 2015.

ROBERT K. INSELMANN, JR., Judge of the 217th
Judicial District Court of Angelina County, Texas
Sitting by Assignment for the County Court at Law
No. One of Angelina County, Texas

| EQUIPMENT | WIFE | HUSBAND |
|---|---|---|
| 4 STAR STOCK TRAILER | | X |
| RED GROUND LOAD STOCK TRAILER | | X |
| BLACK DUMP TRAILER | | X |
| CIRCLE J 4 HORSE TRAILER | X | |
| BUFFALO CHUTE | | X |
| MILLER WELDER | | X |
| LINCOLN WIRE FEED WELDER | X | |
| DELL INSPIRON INTEL CORE I3 COMPUTER | X | |
| TOSHIBA LAPTOP COMPUTER | X | |
| DELL OPTIPLEX COMPUTER | X | |
| SHOW PRO MECHANICAL COW (IN POLLOCK) | X | |
| SHOW PRO MECHANICAL COW (IN ALBERTA) | | X |
| HAND-MADE BLUE COW FEEDER | X | |
| HAND-MADE BLUE COW FEEDER | X | |
| 5 TOMB STONE FEEDER IN ALBERTA | | X |
| 3 ROUND FEEDERS IN TEXAS | X | |
| BIG RECTANGULAR SELF HAY FEEDER | | X |
| FOSS FUEL BOILER | | X |
| TROY BUILT LAWN MOWER | X | |
| JOHN DEERE LAWN MOWER | | X |
| HONDA GENERATOR | X | |
| PANELS (IN TEXAS) | X | |
| INSTA CHAIN | | X |
| QUICKSILVER ROPING CHUTE | X | |
| QUICKSILVER ROPING CHUTE (PAID FOR) | | X |
| SCORING LANE | X | |
| ALLEY WAY PANELS (IN ALBERTA) | | X |
| HAMILTON PANELS | X | |
| 3 DEEP FREEZERS | | X |

EXHIBIT "A"

page 1



2

| Item | Col 1 | Col 2 |
|---|---|---|
| UFA SELF FEEDER (IN ALBERTA) | | X |
| SMALL TRAILER AND TWO WATER TANKS | X | |
| JOHN DEERE DITCH BLADE | | X |
| HAND-MADE STEEL SELF FEEDER (IN ALBERTA) | | X |
| BALE BOSS (IN TEXAS) | | X |
| OLD SINGER SEWING MACHINE (IN TEXAS) | X | |
| ROOHIDE CUTTING SADDLE (QY417921100EROO) | | X |
| ROOHIDE CUTTING SADDLE (DKB18730401ROO) | X | |
| WESTERN HAULER DECK (IN TEXAS) | | X |
| TAD SANDERS ROPING SADDLE | | X |
| BIG ROCK TROPHY SADDLE | | X |
| BRIDLES | ALREADY DIVIDED | |
| SADDLE PADS | ALREADY DIVIDED | |
| HORSE BLANKETS | ALREADY DIVIDED | |
| SHOEING STAND AND TOOLS (IN TEXAS) | | X |
| HORN CUTTERS (IN ALBERTA) | | X |
| CHOP SAW | X | |
| SKIL SAW | X | |
| DEWALT CORDLESS DRILL 18V (NEW) | X | |
| DEWALT CORDLESS DRILL 18V (OLD) | | X |
| TOOLS | X | |
| HONDA PRESSURE WASHER | | X |
| BATTERY CHARGER | | X |
| AIR COMPRESSOR | X | |
| BLACK 16' FLAT DECK | X | |
| WALDON LOADER | X | |
| KUBOTA TRACTOR | X | |
| ARENA ATTACHMENT | X | |
| KING KUTTER | | X |
| FAN | X | |
| SEMEN TANK (IN TEXAS) | X | |
| SEMEN TANK (IN ALBERTA) | | X |
| Three (3) RUBBERMAID WHEEL BARROWS (IN TEXAS) | X | |
| Three (3) BLUE WHEEL BARROWS (IN TEXAS) | | X |

EXHIBIT "A"

PAGE 2

| | | |
|---|---|---|
| ~~TEXT~~ | | |
| SILVER SADDLE RACK | | X |
| BLACK SADDLE RACK (IN ALBERTA) | | X |
| BLACK SADDLE RACK (IN TEXAS) | X | |
| BAR-B-QUE | X | |
| BALE HANDLER | X | |

EXHIBIT "A"

PAGE 3

Deed of Trust to Secure Assumption

Date: June 14, 2013

Grantor: MARIE-CLAUDE L. HANSON

Grantor's Mailing Address:

    14060 W. Hwy. 103
    Pollock, Texas 75969
    Angelina County, Texas

Trustee: Jerry Bain

Trustee's Mailing Address:

    109 W. Ferguson
    Tyler, Texas 75702
    Smith County

Beneficiary: MAX B. HANSON

Beneficiary's Mailing Address:

    Box 1119
    Redwater, Alberta
    Canada, ToA2W0 County

Note and Deed of Trust Assumed

    Date: October 26, 2007

    Original Principal Amount: $150,000.00

    Maker and Grantor: MARIE-CLAUDE HANSON and MAX B. HANSON

    Payee and Beneficiary:     Commercial Bank of Texas, N.A.

    Recording Information:    Document Number 2007-00236563

Property (including any improvements):

SEE EXHIBIT "A" WHICH IS ATTACHED HERETO AND INCORPORATED
HEREIN AS IF COPIED HEREIN VERBATIM.

EXHIBIT "B"

Prior Lien: None

Other Exceptions to Conveyance and Warranty: None

Beneficiary has conveyed the property to Grantor, who as part of the consideration promised to pay the note assumed and to be bound by the deed of trust assumed.

For value received and to secure Grantor's assumption, Grantor conveys the property to Trustee in trust. Grantor warrants and agrees to defend the title to the property, subject to the other exceptions to conveyance and warranty. If Grantor performs all the covenants of the note and deed of trust assumed and if Beneficiary has not filed a notice of advancement, a release of the deed of trust assumed will release this deed of trust to secure assumption and Beneficiary's vendor's lien.

### Clauses and Covenants

A.  Grantor's Obligations

Grantor agrees to --

1.  perform all the covenants of the Note and Deed of Trust assumed; and

2.  notify Beneficiary and Lender of any change of address.

B.  Beneficiary's Rights

1.  Beneficiary may appoint in writing a substitute trustee, succeeding to all rights and responsibilities of Trustee.

2.  If Grantor fails to perform any of Grantor's obligations under the note assumed or deed of trust assumed, Beneficiary may perform those obligations, advance funds required, and then be reimbursed by Grantor on demand for any amounts so advanced, including attorney's fees, plus interest on those amounts from the dates of

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson                    2

payment at the highest legal rate. The amount to be reimbursed will be secured by this deed of trust to secure assumption.

3.     Beneficiary may file a sworn notice of such advancement in the office of the county clerk where the property is located. The notice will detail the dates, amounts, and purposes of the amounts advanced and the legal description of the property.

4.     If Grantor fails on demand to reimburse Beneficiary for the amounts advanced and such failure continues after Beneficiary gives Grantor notice of the failure and the time within which it must be cured, to the extent required by law or by written agreement, Beneficiary may –

        a.     exercise Beneficiary's rights with respect to rent under the Texas Property Code, as then in effect;

        b.     direct Trustee to foreclose this lien, in which case Beneficiary or Beneficiary's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

        c.     purchase the property at any foreclosure sale by offering the highest bid, and then have the bid credited to the amount owed to Beneficiary.

C.     Trustee's Rights and Duties

If directed by Beneficiary to foreclose this lien, Trustee will –

1.     either personally or by agent give notice of the foreclosure sale as required by this deed of trust to secure assumption and the Texas Property Code as then in effect;

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        3

2.    sell and convey all of part of the property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to prior liens and to the other exceptions to conveyance and warranty and without representation or warranty, express or implied, by Trustee;

3.    from the proceeds of the sale, pay, in this order -

    a.    expenses of foreclosure, including a reasonable commission to Trustee;

    b.    to Beneficiary, the full amount advanced, attorney's fees, and other charges due and unpaid;

    c.    any amounts required by law to be paid before payment to Grantor; and

    d.    to Grantor, any balance; and

4.    be indemnified, held harmless, and defended by Beneficiary against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust to secure assumption, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

D.    General Provisions.

1.    If any of the property is sold under this deed of trust to secure assumption, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        4

2.      Recitals in any trustee's deed conveying the property will be presumed to be true.

3.      Proceeding under this deed of trust to secure assumption, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.      This lien will be superior to liens later created even if Beneficiary has made no advancements when later liens are created.

5.      If any portion of the advancements cannot be lawfully secured by this deed of trust to secure assumption, payments will be applied first to discharge that portion.

6.      A sale of the property under this deed of trust to secure assumption-

      a.      is subject to Grantor's continuing obligation to make all payments owing on the note assumed and to perform all obligations under the deed of trust assumed; and

      b.      does not extinguish Trustee's right to conduct subsequent sales of the property for future Grantor defaults under this deed of trust to secure assumption.

7.      Grantor collaterally assigns to Beneficiary all present and future rent from the property and its proceeds. Grantor warrants the validity and enforceability of the assignment. Grantor will apply all rent to payment of the note assumed and performance of the deed of trust assumed, but if the rent exceeds the amount due with respect to the note and deed of trust assumed, Grantor may retain the excess. If a default exists in payment of the note assumed or performance of this deed of trust to secure assumption or of the deed of trust assumed, Beneficiary may exercise Beneficiary's rights with respect

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson        5

to rent under the Texas Property Code, as then in effect. Beneficiary neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the property. Beneficiary may exercise Beneficiary's rights and remedies under this paragraph without taking possession of the property. Beneficiary will apply all rent collected under this paragraph as required by the Texas Property Code, as then in effect. Beneficiary is not required to act under this paragraph, and acting under this paragraph does not waive any of Beneficiary's other rights or remedies.

8. Interest on the debt secured by this deed of trust to secure assumption will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

9. Any action taken under this deed of trust to secure assumption will not extinguish the rights of Beneficiary to proceed against Grantor under the indemnity contained in the deed by which Grantor assumed the note and deed of trust assumed.

10. When the context requires, singular nouns and pronouns include the plural.

Deed of Trust to Secure Assumption.
Grantor: Marie-Claude L. Hanson                    6

11. This deed of trust to secure assumption binds, benefits, and may be enforced by the successors in interest of all parties.



_____

MARIE-CLAUDE L. HANSON

*This instrument was prepared based on information furnished by the parties, and no independent title search has been made.*

STATE OF TEXAS            )
COUNTY OF ANGELINA      )

This instrument was acknowledged before me on April 7, 2015 by MARIE-CLAUDE L. HANSON.



NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018

Notary Public, State of Texas

PREPARED IN THE OFFICE OF:      AFTER RECORDING RETURN TO:

Bain, Files, Jarrett, Bain & Harrison, PC    Max B. Hanson
109 W. Ferguson                 Box 1119
Tyler, TX 75702                 Redwater, Alberta
Tel: (903) 595-3573             Canada , TOA2WO
Fax: (903) 597-7322

Deed of Trust to Secure Assumption
Grantor: Marie-Claude L. Hanson         7

TRACT ONE:

# EXHIBIT "H"

BEING all that certain tract or parcel of land lying and situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 505 and being all of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Deed Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 19.94 acre tract and the Northeast corner of that certain 3.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas, a ½" pipe set for corner (where a ½" pipe was found in March 1997) in the South boundary line of that certain 21.54 acre tract (28.17 acres save and except 2.15 acres and 4.48 acres) described in a deed from Brooks Williams, et al to Mavis Jane Williams Evans dated January 30, 1981 and recorded in Volume 569 on Page 277 of the Deed Records of Angelina County, Texas, said pipe being approximately 1 feet South of a fence.

THENCE S 88° 48' 02" E (called S 88° 57' 33" E) with the North boundary line of the said 19.94 acre tract and the South boundary line of the said 21.54 acre tract, at 1171.00 feet (called 1172.90 feet) the Northeast corner of the said 19.94 acre tract and the Northwest corner of that certain 15.000 acre tract described as Tract Four in a deed from Charles T. Matts, et ux to Thomas B Fenley, et ux dated November 17, 1989 and recorded in Volume 783 on Page 363 of the Deed Records of Angelina County, Texas, a ½" pipe found for corner witnessed by a fence corner bearing S 35° E 2.7 feet, a fence corner bearing S 12° E 5.1 feet, a fence corner bearing S 15° W 6.2 feet, a fence corner bearing S 14° W 12.6 feet, and an ½" rod found for a corner of the said 15.000 acre tract and the Southeast corner of the said 21.54 acre tract bearing S 88° 57' 26" E 334.30 feet.

THENCE S 13° 17' 13" W (called S 13° 07' 34" W) with the East boundary line of the said 19.94 acre tract and the West boundary line of the said 15.000 acre tract, at 814.71 feet (called 814.74 feet) the Southeast corner of the said 19.94 acre tract and the Southwest corner of the said 15.000 acre tract, a ½" rod found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a concrete right-of-way monument bearing S 82° 14' 01" E 278.47 feet and a fence corner bearing N 14° 26.5 feet;

THENCE N 82° 14' 01" W (called N 87° 15' 36" W) with the South boundary line of the said 19.94 acre tract and the North right-of-way line of the said State Highway No. 103, at 115.84 feet pass on line a concrete right-of-way monument, at 1038.10 feet (called 1039.40 feet) the Southwest corner of the said 19.94 acre tract and the Southeast corner of the aforesaid 3.00 acre tract, a ½" pipe found for corner, said pipe witnessed by a ½" pipe found for a Southwest corner of the said 3.00 acre tract being N 87° 14' 01" W 134.24 feet and a concrete right-of-way monument bearing N 87° 14' 01" W 782.05 feet;

THENCE N 02° 47' 16" E (called N 02° 43' 13" E) with the West boundary line of the said 19.94 acre tract and the East boundary line of the said 3.00 acre tract, at 5.5 feet cross a fence, at 771.41 feet (called 768.94 feet) the point and place of beginning and containing 19.96 acres of land, more or less.

Basis of Bearings:    The South boundary line of that certain 3.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas (deed call N 87° 14' 01" W 134.24 , found ½" pipes 134.24 feet apart).

Exhibit A Legal Description (Short)    Page 1 of 2    Rev 7/02



...being that certain tract or parcel of land, lying and being situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 503, and being a part or portion of that certain 7.85 acre tract described in a Contract of Sale and Purchase from the Veterans Land Board of Texas to Logan B. Finch, dated February 11, 1993 and recorded in Volume 907 on Page 157 of the Real Property Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel of land being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 7.85 acre tract and the Northeast corner of that certain 2.636 acre tract described in a deed from Tom Fenley and Charley T. Netts to Send Flat Cemetery Association dated April 30, 1976 and recorded in Volume 447, Page 692 of the Deed Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner in the South boundary line of that certain tract described in a deed from Brooke Williams et al to Mavis Jane Williams Evans dated January 30, 1963 and recorded in Volume 540, Page 377 of the Deed Records of Angelina County, Texas;

THENCE S 08 deg. 55' 39" E with the North boundary line of the said 7.85 acre tract and the South boundary line of the said Evans tract, at 159.94 feet the Northeast corner of the said 7.85 acre tract and the Northwest corner of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 975 on Page 658 of the Real Property Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner;

THENCE S 07 deg. 47' 16" W with the East boundary line of the said 7.85 acre tract and the West boundary line of the said 19.94 acre tract, at 771.41 feet the Southeast corner of the said 7.85 acre tract and the Southwest corner of the said 19.94 acre tract, a 1/2" pipe found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way) said pipe witnessed by a 1/2" pipe (at a fence corner) bearing N 30 deg. W 2.5 feet;

THENCE N 87 deg. 14' 01" W with the South boundary line of the said 7.85 acre tract and the North right-of-way line of the said State Highway No. 103, at 174.24 feet a 1/2" pipe set for corner, said pipe being S 87 deg. 14' 07" E 300.00 feet from the Southwest corner of the said 7.85 acre tract, said pipe being approximately 3 feet South of a fence;

THENCE N 00 deg. 51' 39" E 413.75 feet, a 1/2" pipe set for corner;

THENCE N 87 deg. 14' 01" W, at 300.00 feet intersect the West boundary line of the said 7.85 acre tract and the East boundary line of the aforesaid 2.636 acre tract, a 1/2" pipe set for corner, said pipe being N 00 deg. 51' 39" E 413.75 feet from the Southwest corner of the said 7.85 acre tract;

THENCE N 00 deg. 51' 39" E with the West boundary line of the said 7.85 acre tract and the East boundary line of the said 2.636 acre tract, at 914.48 feet the point and place of beginning and containing 5.00 acres of land, more or less.

Basis of bearings: The North boundary line of the aforesaid 7.85 acre tract (Deed call S 08 deg. 55' 39" E).

Exhibit "A" Legal Description        Page 2 of 2        Rev. 1/93

## _ASSIGNMENT OF INTEREST_

In accordance with the terms of the Decree of Divorce rendered in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson", in County Court at Law Number One of Angelina County, Texas, I, MARIE-CLAUDE L. HANSON, TRANSFER, CONVEY, and ASSIGN to MAX B. HANSON, of Box 1119, Redwater, Alberta, Canada, ToA2WO County, any and all right, title, and interest I may now own or have any future claim of ownership in and to:

1.      Any judgment awarded to MAX B. HANSON in his personal injury lawsuit, Cause No. 120319049, _Max Hanson, Clifford Stover, and Pamela Stover v. Grisby Holton Ingram_, In the District Court of Robertson County, Texas.

I further authorize that a photocopy of this instrument may be used as an original.

SIGNED on _____.


_____
MARIE-CLAUDE L. HANSON


STATE OF TEXAS                          §
COUNTY OF ANGELINA                      §

This instrument was acknowledged before me on _____,
2013, by MARIE-CLAUDE L. HANSON.


_____
NOTARY PUBLIC, State of Texas



EXHIBIT "C"

 **COPY**

## THE LAND TITLES ACT

### TRANSFER OF LAND

Max B. Hanson and Marie Claude Lucille Hanson

being registered owners of an estate in fee simple, subject, however to such encumbrances, liens and interest are notified by memorandum underwritten, or endorsed hereon in all that certain tract of land situate in the Province of Alberta, being composed of

PLAN        0722716
BLOCK      1
LOT         1
EXCEPTING THEREOUT ALL MINES AND MINERALS
AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

do hereby in consideration of the division of property in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson; and In the Interest of Tell Arbour Hanson, a child," entered in County Court at Law Number One of Angelina County, Texas hereby acknowledge and transfer to the said transferee,

Max B. Hanson of Box 119, Redwater, Alberta      T0A 2W0

all our estate and interest in the piece of land.

IN WITNESS WHEREOF we have hereunto subscribed our names this _____ day of _____, 2015 to be effective on and after the _____ day of May, 2013.

SIGNED by the said Max B. Hanson and Marie Claude Lucille Hanson

_____
Witness

_____
Max B. Hanson

_____
Witness

_____
Marie Claude Lucille Hanson

EXHIBIT "D"

 **COPY**

## AFFIDAVIT OF EXECUTION

CANADA                                    )     I, Jimmy A. Cassels
PROVINCE OF ALBERTA                       )     of Lufkin, Texas,
TO WIT:                                   )     MAKE OATH AND SAY THAT:

1.    I was personally present and did see Marie Claude Lucille Hanson named in the within (or annexed) instrument who is personally known to me to be the person named therein, duly sign and execute the same for the purpose named therein.

2.    The same was executed at Lufkin, Texas and I am the subscribing witness thereto.

3.    I know the said party and she is in my belief of the full age of 18 years.

SWORN before me at Lufkin, Texas,        )
this 7th day of April        2015        )
to be effective on or after the     day  )
of May, 2013.                            )
                                         )
                                         )     JIMMY A. CASSELS
                                         )
                                         )
A NOTARY PUBLIC IN AND FOR               )
THE STATE OF TEXAS                       )

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12.01.2018

 **COPY**

**DOWER ACT**
**(SECTION 7)**

**RELEASE OF DOWER RIGHTS**

TO THE REGISTRAR OF LAND TITLES:

Take notice that I, Marie Claude Lucille Hanson, being the ex-wife of Max B. Hanson of, Redwater, Alberta, who is the registered owner of the following land, namely:

PLAN      0722716
BLOCK      1
LOT      1
EXCEPTING THEREOUT ALL MINES AND MINERALS
AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

hereby release to my ex-husband all my life estate and other dower rights in the above described land, and I hereby discharge my, ex-husband, Max B. Hanson, his heirs, executors and administrators form any claim for dower under the *DOWER ACT* in respect of the land for and in consideration of the full and final settlement of a divorce under Cause Number DV-00731-12-01 in the County Court at Law Number 1 of Angelina County, Texas.

IN WITNESS WHEREOF I have hereunto set my hand and seal this _____ day of _____, 2015 to be effective or after the _____ day of May 2013.

SIGNED, SEALED AND DELIVERED in the presence of the Notary as set out below.

_____
Marie Claude Hanson

THE STATE OF TEXAS      §

COUNTY OF ANGELINA      §

This instrument was acknowledged before me on the 7th day of April, 2015, by MARIE-CLAUDE L. HANSON.

_____
Notary Public, State of Texas

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018



## AFFIDAVIT OF EXECUTION

CANADA                 )     I, _Jimmy A. Cassels_

PROVINCE OF ALBERTA     )     of Lufkin, Texas,

TO WIT:                )     MAKE OATH AND SAY THAT:

1. I was personally present and did see Marie Claude Lucille Hanson named in

   (1) An Affidavit in Support of Dower Release;

   (2) A Transfer of Land Instrument under the Land Titles Act; and

   (3) A Release of Dower Rights document.

   who is personally known to me to be the person named therein, duly sign and execute these instruments for the purpose named therein.

2. This document was acknowledged before me by Marie Claude Lucille Hanson apart from her spouse.

3. The same was executed at Lufkin, Texas and I am the subscribing witness thereto.

4. I know the said Marie Claude Lucille Hanson, and she is in my belief of the full age of 18 years.

SWORN before me at Lufkin, Texas,    )

this 7th day of April, 2015    )

to be effective on or after the _____ day    )

of May, 2013.    )    JIMMY A. CASSELS

    )

    )

    )

A NOTARY PUBLIC IN AND FOR    )

THE STATE OF TEXAS    )

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-20__

 **COPY**

**DOWER ACT**

**(SECTION 7)**

**AFFIDAVIT IN SUPPORT OF DOWER RELEASE**

I, Marie Claude Lucille Hanson, of Lufkin, Texas, MAKE OATH AND SAY THAT:

1.    I am the ex-wife of Max B. Hanson of Redwater, Alberta.

2.    My ex-husband is the registered owner of the following land, namely:

PLAN      0722716
BLOCK    1
LOT      1
EXCEPTING THEREOUT ALL MINES AND MINERALS
AREA: 64.9 HECTARES (160.37 ACRES) MORE OR LESS

3.    I am aware that the *Dower Act* gives me a life estate and other dower rights in the land.

4.    I am executing this release for the purpose of giving up my life estate and other dower rights in the land.

5.    I am executing this release freely and voluntarily without any compulsion on the part of my ex-husband.

SWORN before me at Lufkin, Texas,    )
this 7th day of April    2015    )
to be effective on or after the    day    )
of May, 2013.    )
    )    Marie Claude Lucille Hanson
    )
    )
    )
A NOTARY PUBLIC IN AND FOR    )
THE STATE OF TEXAS    )

NOELIA RIOS
Notary Public
State of Texas
My Commission Expires
12-01-2018



## Special Warranty Deed

Notice of confidentiality rights: If you are a natural person, you may remove or strike any or all of the following information from any instrument that transfers an interest in real property before it is filed for record in the public records: your Social Security number or your driver's license number.

Date: _June 14, 2013_

Grantor: MAX B.HANSON

Grantor's Mailing Address:
_Box 1119_
_Redwater, Alberta_
_Canada, T0A2W0_

Grantee: MARIE-CLAUDE L.HANSON

Grantee's Mailing Address:
14060 W. Hwy. 103
Pollok, Texas, 75969
Angelina County

Consideration:

The division of property in Cause No. DV-00731-12-01, styled "In the Matter of the Marriage of Marie-Claude L. Hanson and Max B. Hanson; and In the Interest of Tell Arbour Hanson, a child," entered in County Court at Law Number One of Angelina County, Texas, and ten dollars and other valuable consideration paid by Grantee, and Grantee's assumption of the unpaid principal and earned interest on the note in the original principal sum of One Hundred Fifty Thousand dollars ($150,000.00) dated October 26, 2007, executed by MARIE-CLAUDE L.HANSON and MAX B.HANSON, and payable to the order of Commercial Bank of Texas, N.A.. The note is secured by a vendor's lien retained in a deed dated October 26, 2007, from Commercial Bank of Texas, N.A. to MARIE-CLAUDE L.HANSON and MAX B.HANSON, and additionally secured by a deed of trust dated October 26, 2007, from MARIE-CLAUDE L.HANSON and MAX B.HANSON to Thomas W. Ellison, Trustee, recorded in Document Number 2007-00236563, of

EXHIBIT "E"

the official public records of real property of Angelina County, Texas. Grantee agrees to indemnify and hold Grantor harmless from payment of the note and from performance of Grantor's obligations specified in the instruments securing payment of the note. Grantor assigns to Grantee the casualty insurance policy on the property, all utility deposits for utility service at the property, and all funds held in escrow for payment of taxes and insurance premiums.

**Property (including any improvements):**

SEE EXHIBIT "A" WHICH IS ATTACHED HERETO AND INFORPORATED HEREIN AS IF COPIED VERBATIM.

**Reservations from Conveyance and Exceptions to Conveyance and Warranty:**

This deed is subject to all easements, restrictions, conditions, covenants, and other instruments of record.

Grantor, for the consideration and subject to the reservations from conveyance and exceptions to conveyance and warranty, grants, sells, and conveys to Grantee all of Grantor's interest in the property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof when the claim is by, through, or under Grantor but not otherwise, except as to the reservations from conveyance and exceptions to conveyance and warranty.

When the context requires, singular nouns and pronouns include the plural.

Grantee assumes all ad valorem taxes due on the property for the current year.

MAX B.HANSON

*This instrument was prepared based on information furnished by the parties, and no independent title search has been made.*

PROVINCE ALBERTA
~~STATE OF TEXAS~~                              §        Jordan T. Henrie
                                                         Barrister & Solicitor
COUNTY OF ~~ANGELINA~~                          §
          LETHBRIDGE

This instrument was acknowledged before me on ___JUNE 14, 2013___ by

MAX B. HANSON.

Notary Public, ~~State of Texas~~
              Province of ALBERTA, CANADA.

                                                         Jordan T. Henrie
PREPARED IN THE OFFICE OF:                               Barrister & Solicitor

CASSELS & REYNOLDS, LLP
117 E. Lufkin Avenue
Lufkin, TX 75901
Tel: (936) 634-8466
Fax: (936) 639-1939

BEING all that certain tract or parcel of land lying and situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 505 and being all of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Deed Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 19.94 acre tract and the Northeast corner of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas, a ½" pipe set for corner (where a ½" pipe was found in March 1997) in the South boundary line of that certain 21.54 acre tract (28.37 acres save and except 2.35 acres and 4.48 acres) described in a deed from Brooks Williams, et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540 on Page 377 of the Deed Records of Angelina County, Texas, said pipe being approximately 1 feet South of a fence.

THENCE S 88° 48' 02" E (called S 88° 57' 53" E) with the North boundary line of the said 19.94 acre tract and the South boundary line of the said 21.54 acre tract, at 1173.00 feet (called 1172.99 feet) the Northeast corner of the said 19.94 acre tract and the Northwest corner of that certain 15.000 acre tract described as Tract Four in a deed from Charles T. Metts, et ux to Thomas B. Fenley, et ux dated November 17, 1989 and recorded in Volume 783 on Page 563 of the Deed Records of Angelina County, Texas, a ½" pipe found for corner witnessed by a fence corner bearing S 55° E 2.7 feet, a fence corner bearing S 12° E 5.1 feet, a fence corner bearing S 15° W 6.2 feet, a fence corner bearing S 14° W 12.8 feet, and an Axle found for a corner of the said 15.000 acre tract and the Southeast corner of the said 21.54 acre tract bearing S 88° 57' 26" E 334.30 feet.

THENCE S 12° 17' 13" W (called S 12° 07' 34" W) with the East boundary line of the said 19.94 acre tract and the West boundary line of the said 15.000 acre tract, at 814.71 feet (called 814.74 feet) the Southeast corner of the said 19.94 acre tract and the Southwest corner of the said 15.000 acre tract, a ½" rod found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a concrete right-of-way monument bearing S 87° 14' 01" E 778.47 feet and a fence corner bearing N 14° 26.5 feet;

THENCE N 87° 14' 01" W (called N 87° 15' 36" W) with the South boundary line of the said 19.94 acre tract and the North right-of-way line of the said State Highway No. 103, at 115.88 feet pass on line a concrete right-of-way monument, at 1038.30 feet (called 1039.40 feet) the Southwest corner of the said 19.94 acre tract and the Southeast corner of the aforesaid 5.00 acre tract, a ½" pipe found for corner, said pipe witnessed by a ½" pipe found for a Southwest corner of the said 5.00 acre tract being N 87° 14' 01" W 134.24 feet and a concrete right-of-way monument bearing N 87° 14' 01" W 782.06 feet;

THENCE N 02° 47' 16" E (called N 02° 43' 53" E) with the West boundary line of the said 19.94 acre tract and the East boundary line of the said 5.00 acre tract, at 2.5 feet cross a fence, at 771.41 feet (called 768.94 feet) the point and place of beginning and containing 19.96 acres of land, more or less.

Basis of Bearings:     The South boundary line of that certain 5.00 acre tract described in a deed from Logan Finch, et ux to Don Burdette, et ux dated July 16, 1997 and recorded in Volume 1114 on Page 133 of the Deed Records of Angelina County, Texas (deed call = N 87° 14' 01" W 134.24 - found ½" pipes 134.24 feet apart)

TRACT TWO

BEING all that certain tract or parcel of ~~~~~ ELISHA PRICE situated in Angelina County, Texas, out of the ELISHA PRICE SURVEY, ABSTRACT NO. 503, and being a part or portion of that certain 7.85 acre tract described in a Contract of Sale and Purchase from the Veterans Land Board of Texas to Logan B. Finch, dated February 11, 1993 and recorded in Volume 907 on Page 157 of the Real Property Records of Angelina County, Texas, to which reference is hereby made for any and all purposes and the said tract or parcel of land being described by metes and bounds as follows, to-wit:

BEGINNING at the Northwest corner of the aforesaid referred to 7.85 acre tract and the Northeast corner of that certain 2.636 acre tract described in a deed from Tom Fenley and Charles T. Hetts to Sand Flat Cemetery Association dated April 30, 1976 and recorded in Volume 442, Page 692 of the Deed Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner in the South boundary line of that certain tract described in a deed from Brooks Williams et al to Mavis Jane Williams Evans dated January 30, 1983 and recorded in Volume 540, Page 377 of the Deed Records of Angelina County, Texas;

THENCE S 88 deg. 55' 39" E with the North boundary line of the said 7.85 acre tract and the South boundary line of the said Evans tract, at 459.94 feet the Northeast corner of the said 7.85 acre tract and the Northwest corner of that certain 19.94 acre tract described in a deed from Byron Smith, Trustee for the Paige Alexander Trust to Don Burdette dated September 24, 1993 and recorded in Volume 935 on Page 658 of the Real Property Records of Angelina County, Texas, a 1/2" pipe found for corner at a fence corner;

THENCE S 02 deg. 47' 16" W with the East boundary line of the said 7.85 acre tract and the West boundary line of the said 19.94 acre tract, at 771.41 feet the Southeast corner of the said 7.85 acre tract and the Southwest corner of the said 19.94 acre tract, a 1/2" pipe found for corner in the North right-of-way line of State Highway No. 103 (120 feet right-of-way), said pipe witnessed by a 1/2" pipe (at a fence corner) bearing N 30 deg. W 2.8 feet;

THENCE N 87 deg. 14' 01" W with the South boundary line of the said 7.85 acre tract and the North right-of-way line of the said State Highway No. 103, at 134.24 feet a 1/2" pipe set for corner, said pipe being S 87 deg. 14' 07" E 300.00 feet from the Southwest corner of the said 7.85 acre tract, said pipe being approximately 3 feet South of a fence;

THENCE N 00 deg. 51' 39" E 413.75 feet, a 1/2" pipe set for corner;

THENCE N 87 deg. 14' 01" W, at 300.00 feet intersect the West boundary line of the said 7.85 acre tract and the East boundary line of the aforesaid 2.636 acre tract, a 1/2" pipe set for corner, said pipe being N 00 deg. 51' 39" E 413.75 feet from the Southwest corner of the said 7.85 acre tract;

THENCE N 00 deg. 51' 39" E with the West boundary line of the said 7.85 acre tract and the East boundary line of the said 2.636 acre tract, at 344.46 feet the point and place of beginning and containing 5.00 acres of land, more or less.

Basis of bearings: The North boundary line of the aforesaid 7.85 acre tract (Deed call S 88 deg. 55' 39" E).

Exhibit "A" Legal Description                    Rev 1/93